242 N.J. Super. 113 (1990)
576 A.2d 39
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PATRICK E. RILEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 24, 1990.
Decided July 3, 1990.
*115 Before Judges ANTELL, BILDER and A.M. STEIN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Travis L. Francis, Designated Counsel, on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Meredith A. Cote, Deputy Attorney General, on the brief).
The opinion of the court was delivered by A.M. STEIN, J.A.D.
Defendant and Harry Bartholomay, Raymond Kise and Rodney Batchler were charged under Warren County Indictment No. 88-03-86 with purposeful and knowing murder, N.J.S.A. 2C:11-3a(1) and (2); felony murder, N.J.S.A. 2C:11-3a(3); two counts of first degree kidnapping, N.J.S.A. 2C:13-1b(1) and (2); first degree robbery, N.J.S.A. 2C:15-1a(1); second degree robbery, N.J.S.A. 2C:15-1a(3); and conspiracy, N.J.S.A. 2C:5-2. The cases were severed. Following an unsuccessful attempt to dismiss the indictment and suppress the use of certain evidence against him at trial, defendant entered a guilty plea to second degree robbery.[1] He was sentenced to a ten-year prison term with a four-year period of parole ineligibility, later reduced to three-and-one-half years. A $30 VCCB penalty was also imposed.
We reverse and remand to the Law Division for entry of an order dismissing the indictment because the prosecutor improperly presented defendant's oral statement and the evidence *116 obtained therefrom to the grand jury in breach of an agreement not to use such statement and evidence.
On December 31, 1985, Thomas Smothergill, defendant's neighbor in his apartment building, invited defendant, Bartholomay, Kise and Batchler to his apartment for a New Year's drink. The men brutally beat Smothergill and robbed him of cassette tapes, money and a television set. Although defendant apparently was not involved in the beating, he helped transport the body to the base of a nearby footbridge on the banks of the Delaware River, where the victim was left to die.
Concerned with his involvement in the incident, defendant called an attorney, John Coyle, on January 4, 1986. Coyle is a former Warren County Assistant Prosecutor who is now in private practice in that county. Coyle placed a telephone call to the New Jersey State Police and informed Trooper Frank Zmigrosky that he had a lead on a missing person. After Coyle provided a description and the location of the body, it was found on January 7, 1986.
Coyle then contacted Richard Hare, a Warren County Assistant Prosecutor, and indicated that he wanted immunity for his client. Hare indicated that he would first have to speak with Howard McGinn, the Warren County Prosecutor. After meeting alone with defendant and his girlfriend, Kerri Hinckley, Coyle realized that Hinckley might also be criminally liable and called a public defender to represent her.
Coyle, Hinckley and defendant traveled to an annex office of the Warren County Prosecutor where Coyle first met alone with Hare, McGinn and Mark Refowich, Assistant District Attorney in North Hampton County, Pennsylvania. After the three prosecutors conferred privately, Refowich told Coyle that they would listen to defendant's testimony without issuing Miranda[2] warnings. The motion judge found that in exchange for receiving a statement in which defendant implicated his *117 cohorts, the prosecutors agreed that neither defendant's statement nor any fruits derived from his statement would be used against him "in court." Neither the agreement nor defendant's statement was reduced to writing.
Following defendant's statement, complaints were signed against Bartholomay, Kise and Batchler. The police then obtained statements from Kise and Hinckley.
The Warren County Prosecutor presented murder and other charges against defendant, Bartholomay, Kise and Batchler to a grand jury. At the grand jury proceeding, an assistant prosecutor called Detective Richard Clayton, who had been present and had taken notes while defendant gave his oral statement. Detective Clayton read his version of defendant's statement to the grand jury, which then returned indictments against defendant and his codefendants.
The motion judge invoked the inevitable discovery rule in denying defendant's dismissal and evidence suppression motions. He determined that the other evidence against defendant, exclusive of his statement and its fruits, would have been discovered even if defendant had not given his statement to the prosecutors. State v. Sugar, 100 N.J. 214, 235-238, 495 A.2d 90 (1985) (Sugar II). The judge noted that the victim's sister reported the robbery to the police and one of the defendant's neighbors saw defendant, Hinckley and two others picking up cassette tapes in the stairwell of defendant's apartment building at approximately 5:00 a.m. on January 1, 1986. He concluded that because this neighbor's name appeared in a local newspaper article and was not mentioned in defendant's statement, it would have inevitably led to defendant's implication in the incident. Accordingly, the judge denied defendant's motions and accepted his guilty plea to robbery.
This ruling was incorrect. We have no way of knowing whether the grand jury would have indicted defendant if the prosecutor had not improperly presented defendant's statement *118 and the fruits thereof. The other evidence of defendant's guilt is meager.
We reverse and dismiss defendant's indictment on principles of fundamental fairness. Agreements to cooperate with authorities are analogous to plea bargain agreements and may be analyzed and enforced under contract law principles. United States v. Carrillo, 709 F.2d 35, 36 (9th Cir.1983). These agreements are subject to constitutional restraints, including the due process guarantee of fundamental fairness to the accused. U.S. Const., Amend. V, XIV; Closson v. State, 784 P.2d 661, 665 (Alaska App. 1989) (citing Cooper v. United States, 594 F.2d 12, 17 (4th Cir.1979) overruled on other grounds, Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)).
The United States Supreme Court has stated that a defendant who pleads guilty pursuant to a plea bargain agreement has a due process right to the enforcement of the bargain. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 433 (1971). As Justice Mountain stated for the New Jersey Supreme Court:
It is ... important to assure a defendant that after the agreement has received final judicial sanction, it will be carried out according to its terms. Only if it is generally believed that performance on the part of the State will not disappoint a defendant's reasonable expectations will plea bargaining become and remain a truly effective device in criminal administration. Aside from this pragmatic necessity, essential fairness dictates the same result. [State v. Thomas, 61 N.J. 314, 322 [294 A.2d 57] (1971)].
We find guidance in Rowe v. Griffin, 676 F.2d 524 (11th Cir.1982). Defendant was an FBI informant working undercover within the Ku Klux Klan. During the Selma-to-Montgomery civil rights march, defendant reported to the FBI that he was with three Klansmen who killed Viola Liuzzo by firing shots into her automobile, but that he was not involved in the killing. After being promised immunity, Rowe testified against the Klansmen before a grand jury, in one federal trial and two state trials. The state trials resulted in a mistrial and an acquittal and the Klansmen were convicted in federal court of *119 violating the victim's civil rights. Thirteen years later, the District Attorney for Lowndes County, Alabama obtained a film from a television network in which defendant and the two surviving Klansmen had submitted to a polygraph examination. The results indicated that defendant had fired the shots which killed the victim. The district attorney then sought to prosecute defendant for the killing.
The United States District Court enjoined the prosecution of defendant, ruling that the Younger[3] abstention doctrine was inapplicable because the prosecution of Rowe was in bad faith and under extraordinary circumstances. 497 F. Supp. 610, 611 (M.D.Ala. 1980).
The Eleventh Circuit affirmed and ruled that defendant only testified because he was led to believe that he would not be prosecuted. He therefore received equitable immunity. The court stated:
We believe that, as a matter of fair conduct, the government ought to be required to honor such an agreement when it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government. [Rowe v. Griffin, 676 F.2d at 528].
Due process requires that the government fulfill its promise when a defendant relies to his detriment on that promise and cooperates with the government. Once defendant's good faith compliance is established, the State must fulfill its part of the bargain and its failure to do so constitutes a per se bad faith prosecution. Id. Cf. Acosta v. Turner, 666 F.2d 949, 953 (5th Cir.1982).
The agreement between defendant and the prosecutor provided that neither defendant's statement nor any fruits derived from that statement would be used against him in court. The *120 Warren County Prosecutor's Office acknowledged that they had no leads in the case prior to defendant's statement. Following defendant's statement, law enforcement officials launched an investigation which resulted in information leading to the arrests and subsequent indictments of the participants. The prosecutor then presented defendant's statement as well as the fruits of that statement to the grand jury.
We reject the motion judge's strict construction of the phrase "in court." Defendant and his attorney had every reason to believe that defendant's statement and the fruits thereof would not be used in any legal proceeding which could lead him into a courtroom. Closson v. State, supra, 784 P.2d at 666 (grand jury proceeding was "court proceeding" within meaning of immunity agreement; defendant's failure to testify before grand jury violated agreement).
The indictment upon which defendant's plea was based was obtained in violation of the agreement. It is therefore void. See United States v. Garcia, 519 F.2d 1343, 1345 (9th Cir.1975). After fully complying in good faith with the demands of the prosecutor, defendant did not receive the benefit of his bargain. Instead, the prosecutor ignored the terms of that agreement and obtained a tainted indictment against defendant. The integrity of the State's prosecutorial powers is severely undermined when county prosecutors breach their duties under cooperation agreements with defendants. Edwards v. State, 465 So.2d 1085, 1086 (Miss. 1985).
We reiterate what we earlier stated in a different context:
If we say with Mr. Justice Holmes, `Men must turn square corners when they deal with the Government,' it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens.[4] *121 [Gruber v. Mayor and Tp. Comm. of Raritan Tp., 73 N.J. Super. 120, 127 [179 A.2d 145] (App.Div. 1961), aff'd 39 N.J. 1 [186 A.2d 489] (1962)].
The judgment of conviction is reversed. The matter is remanded to the Law Division for entry of an order dismissing the indictment against defendant Patrick E. Riley.
NOTES
[1] The record does not indicate the entry of a conditional guilty plea, defendant reserving the right to appeal with court approval and the prosecutor's consent. R. 3:9-3(f). However, because the parties have briefed the substantive issues, we will treat the appeal as if the guilty plea was conditional.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (federal court cannot enjoin state criminal proceeding except under extraordinary circumstances where danger of irreparable injury is present).
[4] Justice Holmes said this in Rock Island, A. & L.R.R. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, 189 (1920). The entire quotation within Gruber comes from Maguire and Zimet, "Hobson's Choice and Similar Practices in Federal Taxation," 48 Harv.L.Rev. 1281, 1299 (1935).