659 A.2d 955

IN THE MATTER OF AN APPLICATION
FOR A PROTECTIVE ORDER [1]

Superior Court of New Jersey
Appellate Division

Submitted June 1, 1995—Decided June 23, 1995.

---

[1] This case involves an attempt by appellant to prevent disclosure of statements he made implicating others in criminal activities. Appellant seeks a protective order for his and his family's protection. Therefore, the record is sealed.

Before Judges SHEBELL, SKILLMAN and KLEINER.

*James C. Patton* and *Michael Querques,* attorneys for appellant (*Mr. Patton* and *Mr. Querques,* on the brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for respondent, State of New Jersey (*Donald C. Campolo,* Deputy Attorney General, of counsel, and on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

In August 1992, appellant learned that he was about to be indicted on State murder and racketeering charges. Appellant through his attorney pursued a pre-indictment plea agreement with the State and agreed to make a statement outlining his criminal conduct. Appellant contends that before he made his statement, State officials agreed that his statements would not be used against him in any criminal proceeding as long as he told the truth, and that his statements would remain confidential. Defendant feared retaliation from others involved in the criminal conduct. A summary of the agreement is contained in an October 8, 1992 letter from the State, which provides:

> [T]he State of New Jersey and the Federal Government will not use any answers provided by [appellant] during the course of his interview by members of the New Jersey State Police and/or the Division of Criminal Justice in any subsequent prosecutions of [appellant] for criminal activity within the State of New Jersey or any other jurisdiction. [Appellant] is obligated to provide complete and truthful answers during the course of his interview. Should it be determined that [appellant] deliberately provided false or misleading information to the New Jersey State Police and/or the Division of Criminal Justice during the course of said interview, it is understood that any and all information provided during the course of said interview can and will be used by the State of New Jersey as it sees fit in any subsequent prosecution involving [appellant].

Appellant alleges that the two State attorneys dealt with "assured us that the information disclosed during the proffer would not be disclosed to anyone in discovery in any subsequent prosecutions." Appellant's attorney stated in his certification in support of an application for a protective order:

> A necessary promise that the State made to induce [appellant] to waive his Fifth Amendment right against self-incrimination and to make and continue to make a proffer was *the promise made by State officials to [appellant] and to me that the fact of the proffer and the substance of the proffer would never be disclosed to anyone.* Without that promise, [appellant], who feared for the safety of his family and himself, would never have made a proffer.
> [ (Emphasis added.) ]

The certification also states that appellant and his attorney were told that a written record of appellant's statements would not be created and used in subsequent prosecutions.

The State contends that, "[w]hile it is true that [appellant] was assured that the *process* of his debriefing would remain confidential as long as he brought integrity to that process, it is also true that he chose to initiate events which led to the revelation of his having chosen to offer his information and cooperation to the State." The State acknowledges that "[a]ppellant was promised use immunity if he was completely truthful," and that appellant was debriefed "in confidence," but asserts that appellant violated the terms of the debriefing agreement and that the State made "[n]o representations of unconditional or permanent secrecy as to the debriefing results * * *."

Following the statement to State officials, appellant is alleged by State officials to have made contradictory statements to Federal prosecutors, in that he admitted to State officials that he had fired the gun shot that killed the victim, but then told Federal officials that another person fired the gun. Prior to entering into a plea agreement with appellant, the State had taken the position that it was free to use appellant's statements because of his untruthfulness, even though it acknowledged that it believed that appellant had originally told the truth to State officials. Eventually, appellant pleaded guilty in State court to first-degree racketeering and first-degree aggravated manslaughter. He has been

incarcerated ever since, and is presently in Federal custody. Under the plea agreement, the State agreed it would not subpoena or compel appellant to testify as a witness in any grand jury or trial proceeding against any person and that it would not use appellant's guilty plea or its factual basis as evidence against anyone in any proceeding unless appellant testified as a defense witness.

State officials also required as a condition of the plea agreement that appellant make a statement outlining the criminal activities of others involved in the homicide. It was agreed that those statements would only be admitted in evidence if appellant testified at trial and that the statements would be sealed until disclosure was required to fulfill the State's discovery obligations. The affidavits are under seal pursuant to a protective order.

The first paragraph of each of appellant's affidavits in support of the plea agreement state:

I make this affidavit pursuant to and in accordance with the terms of the plea agreement made between myself and the State of New Jersey. It is agreed that the State of New Jersey will petition the Court for a protective order to seal this affidavit until further Order of the Court. It is further my understanding that, pursuant to my plea agreement with the State of New Jersey, while I am not precluded from testifying on behalf of a criminal defendant, that this truthful affidavit would be unsealed and could only be introduced into evidence in the event that I do testify. *I also understand that the State of New Jersey must, at some point, disclose this affidavit, in whole or in part, in fulfillment of the State's discovery obligations and in accordance with obligations imposed by the State and Federal Constitution.*

[ (Emphasis added.) ]

The State appears to have released portions of appellant's preliminary statement that directly relate to a September 1994 grand jury indictment charging other defendants in connection with the homicide. State officials have expressed an intent to release to the defendants the remainder of the statements made by appellant, on the grounds that the material must be released to completely fulfill the State's discovery obligation under *Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963).

Appellant requested a conference with the trial judge assigned to the pending indictment to ask for a protective order. The judge denied the request, noting that *R.* 3:13–3(d)(1) provides that the court *on motion* may consider an application for a protective order, and that if a hearing was held without counsel for defendants, they would never be aware of the hearing or the ruling. The judge also expressed concern with respect to whether a non-party has standing to seek a protective order in a criminal matter. He further noted that consideration of the protective order application without notice to defendants may be inappropriate under Canon 3A(6) of the *Code of Judicial Conduct.*[2] Therefore, he required that a motion be filed with notice to the defendants charged in the pending indictment in order to hear the application for a protective order. We granted appellant's motion to stay disclosure pending appeal.

We will not at this time consider the merits of the State's argument that it is obligated to disclose the material in response to defendants' request for discovery and that the prosecution of the case might be compromised by non-disclosure. We note that although appellant was aware at the time he gave his statements as required by the plea agreement that the information he supplied might be examined for *Brady* material in related prosecutions, he nonetheless makes the assertion that the material in the preliminary statement is cumulative and immaterial, and therefore is not discoverable as the State has already released the relevant portions of the statement to the defendants.

█ We first address the judge's concerns as to appellant's standing to be heard in a matter relating to a criminal indictment in which he is not named. We are convinced that there is no compelling reason to deny appellant standing to challenge release

---

[2] 3A(6) provides: "A judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding."

of the allegedly confidential statements. Other courts have recognized a third party's right to intervene in a criminal trial to challenge the production of assertedly privileged information. *United States v. RMI Co.*, 599 *F*.2d 1183, 1186 (3d Cir.1979); *United States v. Cuthbertson*, 651 *F*.2d 189 (3d Cir.), *cert. denied*, 454 *U.S.* 1056, 102 *S.Ct.* 604, 70 *L.Ed.*2d 594 (1981); *In re Grand Jury*, 541 *F*.2d 373, 376–77 (3d Cir.1976); *see Viruet v. Sylvester*, 131 *N.J.Super.* 599, 603, 331 *A.*2d 286 (App.Div.), *certif. denied*, 68 *N.J.* 138, 343 *A.*2d 426 (1975). Additionally, there are numerous cases in which the party from whom discovery is sought asserts a privilege held by a third party. *See e.g., In re Maraziti*, 233 *N.J.Super.* 488, 559 *A.*2d 447 (App.Div.1989) (attorney-client privilege not compromised by defendant's due process right to exculpatory material); *Commonwealth v. Kyle*, 367 *Pa.Super.* 484, 533 *A.*2d 120 (1987), *appeal denied*, 518 *Pa.* 617, 541 *A.*2d 744 (1988) (psychologist-patient privilege not overridden by defendant's due process rights); *People v. Foggy*, 121 *Ill.*2d 337, 118 *Ill.Dec.* 18, 521 *N.E.*2d 86, *cert. denied*, 486 *U.S.* 1047, 108 *S.Ct.* 2044, 100 *L.Ed.*2d 628 (1988) (rape counseling privilege may overcome due process rights). We see no significant difference where the third party directly intervenes in order to protect privileged information. *See People v. Stanaway*, 446 *Mich.* 643, 521 *N.W.*2d 557, 577 (1994), *cert. denied*, —— *U.S.*.——, 115 *S.Ct.* 923, 130 *L.Ed.*2d 802 (1995) (where privileged information held by third party, privilege may not be compromised without permission of person who holds privilege).

Clearly, the statements are of such a nature as to create a risk of retaliation. Ordinarily, where there was a promise not to disclose information, the State would resist disclosure. *See, e.g., United States v. De La Cruz*, 996 *F*.2d 1307, 1312 (1st Cir.), *cert. denied*, —— U.S. ——, 114 *S.Ct.* 356, 126 *L.Ed.*2d 320 (1993) (Government contends that no obligation to divulge exculpatory material because of promise of confidentiality). Here, however, the State seeks to disclose the information in order not to jeopardize its pending indictment and seeks to justify the turnover on the

grounds of appellant's breach of the agreement. Therefore, appellant is forced to file an application for a protective order himself.

We are satisfied that appellant should be given the opportunity to show that there was an agreement with the State not to disclose the information and that he kept his part of the bargain, thereby entitling him to enforce the agreement to the extent it is now possible to do so. Generally, promises by law enforcement officials, and the reasonable expectations of those to whom the promises are made, must be scrupulously honored. *United States v. Brimberry,* 744 *F.*2d 580, 587 (7th Cir.1984); *State v. Riley,* 242 *N.J.Super.* 113, 119, 576 *A.*2d 39 (App.Div.1990) ("agreements to cooperate with authorities are analogous to plea bargain agreements and may be analyzed and enforced under contract law principles"); *State v. Davis,* 244 *N.J.Super.* 180, 193–94, 581 *A.*2d 1333 (App.Div.1990) (defendant's reasonable expectations, generated by pretrial or plea negotiations, "require meticulous adherence"; "the word of the State through its prosecutors must be worthy of trust and reliance").

We remand to the Law Division for a determination of whether there was an agreement, what the parties agreed to, and whether there was a breach of the agreement. If the court finds that there is an enforceable agreement, it must then examine the material to determine whether it has to be disclosed under *Brady v. Maryland, supra.* These issues can be determined without notice to the defendants.[3] The presence of the State during the proceeding renders it not *ex parte,* and Judicial Canon 3A(6) is not applicable as the procedure is authorized by law.

Under the ordinary *Brady* scenario, a defendant makes a general request for exculpatory material. Without independent information from an individual who has provided the State with infor-

---

[3] The court may, nonetheless, in its discretion determine at any time whether there would be any harm in notifying counsel for defendants in the pending indictment that it will conduct an *in camera* review of potentially exculpatory material held by the prosecutor.

mation, the defendant has no way of knowing whether the prosecutor holds exculpatory information. *In camera* review by the trial court without notice to the defendant is no different than the usual course where the prosecutor independently reviews and assesses its files for *Brady* material. Where the defendant requests *Brady* material, his or her interests are sufficiently protected by *in camera* review by the trial court to determine whether the information is material and helpful. *Pennsylvania v. Ritchie,* 480 *U.S.* 39, 60, 107 *S.Ct.* 989, 1002, 94 *L.Ed.*2d 40, 59 (1987); *State v. Cusick,* 219 *N.J.Super.* 452, 461–63, 530 *A.*2d 806 (App.Div. 1987); *State v. McBride,* 213 *N.J.Super.* 255, 269–72, 517 *A.*2d 152 (App.Div.1986); *State v. Paradee,* 403 *N.W.*2d 640 (Minn.1987). *In camera* review is also allowed under *R.* 3:13–3(d)(2). Thus, defendants suffer no prejudice by not receiving notice of the motion, particularly as in the present case the prosecutor is assiduously representing defendants' interests.

■ Of course, determination of the existence of an agreement and its terms should be made in light of the rule that a defendant's reasonable expectations generated by Government promises "require meticulous adherence." *State v. Davis, supra,* 244 *N.J.Super.* at 193–94, 581 *A.*2d 1333. Mere technical shortcoming in the language of a writing should not take precedence over the importance of guarding against harm to appellant and innocent third parties.

Assuming the judge finds a promise of confidentiality and no breach by appellant, he must then consider *in camera* whether the due process rights of any defendant in the pending indictment override the State's promise of confidentiality. In *United States v. Dupuy,* 760 *F.*2d 1492 (9th Cir.1985), the prosecutor entered into plea negotiations with two co-defendants and agreed that the discussion would not be used for any reason except impeachment of the defendants themselves. The prosecutor took notes of the interviews, and during trial, decided that her notes contained *Brady* material. She, therefore, notified the trial judge of her dilemma. The trial judge, without reviewing the information or

divulging it to defendants, disclosed the identities of those who made the statements, in order to enable defendants to proceed to obtain the *Brady* material. The Court of Appeals reversed and ordered the trial judge to conduct an *in camera* review of the information to determine whether disclosure might have affected the outcome of the trial. *Dupuy, supra,* 760 *F.*2d at 1500–03.

In *State v. Cusick,* 219 *N.J.Super.* 452, 530 *A.*2d 806 (App.Div. 1987), we held that the defendant's rights had not been infringed by nondisclosure of statements covered by a qualified privilege where the information had been considered by the trial court *in camera* and found not to be essential to a fair determination of the case and obtainable "from other sources through diligent investigation." *Id.* at 457, 459, 530 *A.*2d 806. The court rejected defendant's contention that he had a right to personal access to the information, finding instead that the trial court was best-equipped to determine questions of materiality. *Id.* at 461, 530 *A.*2d 806.

■■ We see the situation here to be essentially the same as in a case where the State resists disclosure of an informant's identity. See *Grodjesk v. Faghani,* 104 *N.J.* 89, 96, 514 *A.*2d 1328 (1986). An informant " 'will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm * * *.' " *State v. Milligan,* 71 *N.J.* 373, 382, 365 *A.*2d 914 (1976) (quoting 8 Wigmore, *Evidence* § 2374, at 761–62 (1961)). The identity of an informant is protected by common law and statutory privilege (*N.J.R.E.* 516), and the State is required to disclose the identity of an informant if disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause * * *." *Roviaro v. United States,* 353 *U.S.* 53, 60–61, 77 *S.Ct.* 623, 628, 1 *L.Ed.*2d 639, 645 (1957). For example, in *United States v. Jiles,* 658 *F.*2d 194 (3d Cir.1981), *cert. denied,* 455 *U.S.* 923, 102 *S.Ct.* 1282, 71 *L.Ed.*2d 465 (1982), the court noted that despite a promise of confidentiality to an informant, an informant's identity must be disclosed if essential to a fair determination of the case. *Id.* at 195–96; *accord State v.*

*Moss,* 648 *So.*2d 206 (Fla.Ct.App.1994), *review denied,* 654 *So.*2d 919 (1995). Nonetheless, "[w]ithout a strong showing of need, courts will generally deny a request for disclosure." *State v. Florez,* 134 *N.J.* 570, 578, 636 *A.*2d 1040 (1994).

In *Florez,* the Supreme Court recognized the need to carefully consider whether disclosure would imperil an informant, but found that that danger did not outweigh a defendant's right to a fair trial. *Id.* at 582–83, 636 *A.*2d 1040. *See also State v. Salley,* 264 *N.J.Super.* 91, 97–98, 624 *A.*2d 42 (App.Div.1993). The Court quoted language from *Roviaro* calling for " 'balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.' " *Florez, supra,* 134 *N.J.* at 579, 636 *A.*2d 1040 (quoting *Roviaro, supra,* 353 *U.S.* at 62, 77 *S.Ct.* at 628–29, 1 *L.Ed.*2d at 646). Under the informant privilege, it is necessary to examine " 'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " *Florez, supra,* 134 *N.J.* at 579, 636 *A.*2d 1040 (quoting *Roviaro, supra,* 353 *U.S.* at 62, 77 *S.Ct.* at 628–29, 1 *L.Ed.*2d at 646).

We point out that the informant privilege is inapplicable when the informant's identity has already been disclosed to those who might seek retaliation. *State v. Milligan, supra,* 71 *N.J.* at 383, 365 *A.*2d 914. However, we also note that appellant alleges that additional disclosure will subject him to a greater danger of reprisal. These are further matters for consideration by the trial judge.

*N.J.R.E.* 515 also offers protection against disclosure. It provides confidentiality for "official information" if disclosure "will be harmful to the interests of the public." This privilege has been interpreted to protect the location of a wiretap, *State v. Travis,* 133 *N.J.Super.* 326, 336 *A.*2d 489 (App.Div.1975), and the location of surveillance positions, *State v. Garcia,* 131 *N.J.* 67, 618 *A.*2d 326 (1993) and *State v. Zenquis,* 131 *N.J.* 84, 618 *A.*2d 335 (1993), unless disclosure is required to protect a defendant's constitutional

rights, *Garcia, supra,* 131 *N.J.* at 79–80, 618 *A.*2d 326. In *Garcia,* where the considerations are not unlike the present case, the Court explained that applying the official information privilege to surveillance sites avoids compromising ongoing surveillance, protects police officers and private citizens from reprisal, and encourages citizens to cooperate with police. *Id.* at 74–75, 618 *A.*2d 326.

Encouragement of disclosure of information relating to organized crime by diminishing the threat of reprisal through promises of confidentiality, serves as important an interest as many other judicially recognized privileges. Often it is necessary to have inside information in order to prosecute an organized crime case. It also is clear that those who provide information are subject to great danger. Those concerns must be recognized under the informant and official information privileges. Thus, there is a need for confidential and careful *in camera* review of the issues raised by appellant. If the information is to be released, the judge and the State should release the information only to the extent required and at the time least threatening to appellant, consistent with the constitutional rights of the defendants.

In summary, a remand is necessary to determine whether there was a promise of confidentiality, its extent and terms, and whether appellant breached the agreement. The trial court must hold a hearing to make those findings. If the trial court finds an enforceable promise of confidentiality, the court should review the information to determine whether it must nonetheless be divulged as *Brady* material.

Reversed and remanded.