728 A.2d 827 (1999)
321 N.J. Super. 219
STATE of New Jersey, Plaintiff-Respondent,
v.
Ernest WILKERSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 1999.
Decided April 23, 1999.
*828 Ivelisse Torres, Public Defender, attorney for defendant-appellant (Matthew Astore, Deputy Public Defender II, of counsel and on the brief).
Peter Verniero, Attorney General, attorney for plaintiff-respondent (Paul H. Heinzel, Deputy Attorney General, of counsel and on the brief).
Before Judges PETRELLA, D'ANNUNZIO and CUFF.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This is an appeal from the denial of four separate post-conviction relief (PCR) petitions filed by defendant Ernest Wilkerson.
On appeal, Wilkerson argues:
I. The trial judge erred in denying his motion for post-conviction relief as there was excusable neglect for the failure to abide by the five year time limit of R. 3:22-12.
II. Post-Conviction relief should have been granted and defendant should have been permitted to withdraw his prior guilty pleas because his attorneys did not inform him of the fact that his guilty pleas could later be used as a sentencing enhancement.
Wilkerson never appealed any of the four underlying convictions, all of which were based on plea agreements, which were the subject of his PCR application. The convictions were as follows. On September 6, 1990, Wilkerson pled guilty to a count in a 1989 state grand jury indictment which charged him with third degree distribution of a controlled dangerous substance (CDS) (cocaine) (N.J.S.A. 2C:35-5b(3)), and shortly thereafter he was sentenced to three years of probation for that offense. On October 5, 1990, Wilkerson pled guilty to one count in a 1990 Mercer County indictment which charged him with first degree possession of CDS (PCP) with intent to distribute, and on January 25, 1991, he was sentenced as a second degree offender to eight years in prison. All remaining charges in that indictment were dismissed pursuant to a plea agreement.
On October 21, 1991, Wilkerson pled guilty to third degree theft by unlawful taking (N.J.S.A. 2C:20-3a and N.J.S.A. 2C:2-6) in another unrelated 1990 Mercer County indictment, and on November 8, 1990, he was sentenced to four years in prison to be served concurrently with the sentence imposed on the conviction for first degree possession with intent to distribute CDS on the earlier Mercer county indictment. Again, all remaining charges were dismissed in accordance with a plea agreement. On October 21, 1991, Wilkerson also pled guilty to third degree terroristic threats (N.J.S.A. 2C:12-3b) in a Mercer County criminal accusation, and was sentenced to four years in prison on November 8, 1990, concurrent with the earlier sentences.
In 1995, Wilkerson (then out of prison) was arrested on federal charges of distributing cocaine in a quantity exceeding ten grams. Wilkerson pled guilty to that charge and was sentenced in federal court on May 12, 1995 to a term of 188 months under the Federal *829 Sentencing Guidelines by virtue of his having obtained "career offender" status. This was an increase from the seventy months sentence he would have received, but for his prior state record.
Although Wilkerson never sought direct appeal from any of his state convictions, he filed PCR petitions between February 4 and March 12, 1997, directed to the various state convictions based on the plea agreements. In arguing the PCR petitions, Wilkerson asserted the common claim that all of his prior attorneys provided ineffective assistance of counsel because they failed to advise him of the possibility that the crimes to which he pled guilty might someday provide the basis for an extended sentence if he were to commit future crimes and face prosecution and conviction for them.[1] His attorney at the PCR hearing remarked that it was not surprising that Wilkerson was not so advised because most defense attorneys, to his understanding, did not give that kind of advice.

I.
The trial judge in a well-written letter opinion concluded that all of Wilkerson's petitions were filed at least six years and nine months after sentencing, and, thus, were barred as beyond the five year limitation period for PCR applications in R. 3:22-12. The judge also concluded that there was no showing of excusable neglect. Moreover, on the merits, the judge rejected Wilkerson's claim of ineffective assistance of counsel.
We agree with Judge Smithson's findings and conclusions. Clearly, Wilkerson's petitions were all filed beyond the time period allowed by R. 3:22-12 and are barred. See State v. Mitchell, 126 N.J. 565, 576-577, 601 A.2d 198 (1992); State v. Dugan, 289 N.J.Super. 15, 19, 672 A.2d 1240 (App.Div.), certif. denied, 145 N.J. 373, 678 A.2d 714 (1996). Moreover, all of Wilkerson's claims are essentially without merit. R. 2:11-3(e)(2). Hence, we need not further address those issues, except for the ineffective assistance of counsel claim.

II.
Wilkerson's brief informs us that the Public Defender's office has at least fifteen appeals and PCR applications pending involving the claim of ineffective assistance of counsel for a defense attorney's failure to advise a defendant in connection with a plea agreement of the consequences of a conviction in the event that a defendant commits a future crime, particularly one which will subject a defendant to federal court jurisdiction and the Federal Sentencing Guidelines. We are also aware from our own calendar that the issue is currently being raised with some repetitiveness. Because the issue has not been definitively decided in this State we address the issue at some length, recognizing that the great weight of authority in other jurisdictions has rejected such an argument.
Aside from the fact that generally individuals should be aware as a matter of common sense that a continuing course of anti-social or criminal conduct may lead to increased penalties, we find no constitutional requirement that a defense attorney must advise a client or defendant that if he or she commits future criminal offenses that there may be adverse consequences by way of enhancement of the penalty.[2]
*830 Judge Smithson stated in his December 15, 1997 letter opinion:
This court declines to adopt Petitioner's proposed new rule of law. There is not, nor should there be, any constitutional requirement that defense counsel be omniscient. With hindsight, it is not difficult to suggest different strategies that an attorney might have pursued, but the law is settled that "[i]n assessing the adequacy of counsel's performance, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Burger v. Kemp, 483 U.S. 776, 819, 107 S.Ct. 3114, 3139, 97 L.Ed.2d 638 (1987) (Powell, J., dissenting) (quoting [Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2063-2064, 80 L.Ed.2d 674, 693 (1984) ]). Nor can the quality of counsel's representation fairly be assessed by focusing solely on events that exist in an unknown future, while ignoring the totality of counsel's performance in the context of the State's compelling evidence of defendant's guilt. Id.

Thus, the contention that Petitioner was denied effective assistance of counsel is utterly without merit. Petitioner does not demonstrate that had he gone to trial, he would have been acquitted of the state charges or sentenced differently. Indeed, all evidence suggests that defense counsel did the right thing by advocating guilty pleas to the state-level charges.
The Motion to Dismiss the Petition for Post-Conviction relief is granted based upon the aforementioned procedural bars. The Petition for Post-Conviction is denied based upon the aforementioned procedural bars and the lack of merit to Petitioner's substantive claims.
A distinction is often drawn between the penal consequences of a plea and potential or actual "collateral consequences."[3] This distinction may have relevance when the court is considering an application to withdraw a plea. State v. Heitzman, 209 N.J.Super. 617, 622, 508 A.2d 1161 (App.Div.1986), aff'd o.b., 107 N.J. 603, 527 A.2d 439 (1987). See also State v. Chung, 210 N.J.Super. 427, 436, 510 A.2d 72 (App.Div.1986) (deportation consequences of guilty plea a collateral rather than penal consequence and need not be disclosed by trial judge); State v. Riggins, 191 N.J.Super. 352, 357, 466 A.2d 981 (Law Div.1983) (loss of employment a collateral consequence of plea and did not justify withdrawing plea even though defendant was misled by his attorney).
Federal courts have consistently rejected the contention that a defendant who pleads guilty must first be advised that the resulting conviction could someday provide the basis for an enhanced sentence after conviction of a future crime, describing that potentiality as merely a "collateral consequence" of the plea. See, e.g., Heath v. Jones, 941 F.2d 1126, 1139 n. 16 (11th Cir.1991), cert. denied, 502 U.S. 1077, 112 S.Ct. 981, 117 L.Ed.2d 144 (1992) (consequence of a conviction on a plea for sentencing enhancement for another crime is collateral); United States v. Ballard, 919 F.2d 255, 258 (5th Cir.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1429, 113 L.Ed.2d 481 (1991) (federal court may consider a state misdemeanor conviction in sentencing); United States v. Edwards, 911 F.2d 1031, 1034-1035 (5th Cir.1990) (use of state conviction to enhance the sentence imposed in a subsequent proceeding held to be collateral consequence); Lewis v. United States, 902 F.2d 576, 577 (7th Cir.), certif. denied, 498 U.S. 875, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990) (defense counsel not constitutionally ineffective for failing to warn defendant of the possibility that a guilty plea to a felony charge may lead to a habitual offender conviction if a future crime is committed); United States v. Brownlie, 915 F.2d 527, 528 (9th *831 Cir.1990) (possibility of conviction of future offense and enhanced sentence not a direct consequence of guilty plea); United States v. Bouthot, 878 F.2d 1506, 1511 (1st Cir.1989) ("A state judge, even if ... aware of the federal implications of a state conviction, is not constitutionally required to warn a defendant about his federal exposure before accepting ... guilty plea."); United States v. Woods, 870 F.2d 285, 288 (5th Cir.1989) (noting that failure to apprise a defendant of possibility that his guilty plea might be used to enhance a sentence following subsequent conviction "is nothing more than a refusal to anticipate a defendant's recidivism"); United States v. Jordan, 870 F.2d 1310, 1317 (7th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) ("Federal prosecution was only a possibility over which the State Attorney had no control...."); Wright v. United States, 624 F.2d 557, 561 (5th Cir.1980) (use of conviction on guilty plea for enhancement in sentencing for another crime is considered collateral); United States v. Lambros, 544 F.2d 962, 966 (8th Cir.1976), cert. denied, 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977) (possibility of enhanced punishment for subsequent conviction was collateral consequence); United States v. Cariola, 323 F.2d 180, 186 (3d Cir. 1963) (trial court is not required to inform a defendant of all possible collateral consequences of his plea, including those at the hands of a different sovereign).[4]
State courts that have addressed the issue have come to a similar result. See, e.g., State v. A.J. Fox, 659 So.2d 1324, 1327 (Fla. Dist.Ct.App.1995), review denied, 668 So.2d 602 (1996) ("the fact that the [State] felony adjudication might be used against the defendant in a subsequent federal prosecution was a collateral consequence of the plea and was not an issue the trial judge was required to cover in the plea colloquy"); Davis v. State, 151 Ga.App. 736, 261 S.E.2d 468, 469 (1979) (possible exposure to federal prosecution a collateral consequence); Carter v. State, 116 Idaho 468, 776 P.2d 830, 831 (1989) (defense counsel's failure to inform defendant about persistent violator statute before defendant pled guilty to felony was not ineffective assistance of counsel); In re E.V., 298 Ill.App.3d 951, 233 Ill.Dec. 74, 700 N.E.2d 175, 179-180, appeal denied, 181 Ill.2d 571, 235 Ill.Dec. 942, 706 N.E.2d 497 (1998) (defense counsel's failure to inform juvenile that guilty plea could be used in future trial regarding any other possible criminal acts committed by juvenile did not constitute ineffective assistance of counsel); Saadiq v. State, 387 N.W.2d 315, 325-326 (Iowa 1986) ("Counsel can hardly conceive of all possible collateral consequences of a guilty plea and need not be a crystal gazer."); Price v. State, 974 S.W.2d 596, 599 (Mo.App.Ct.1998) (neither trial judge nor defense counsel had affirmative obligation to provide defendant with parole eligibility information as condition for plea to have been voluntary); Stocks v. Warden, 86 Nev. 758, 476 P.2d 469, 470-471 (1970) (trial court not required to advise defendant, prior to accepting guilty plea, that parole was not available to one sentenced as a habitual offender); State v. Miranda, 100 N.M. 690, 675 P.2d 422, 425 (N.M.Ct.App. 1983) ("There exists a right to assume that defendants will not be guilty of a subsequent offense but will be law-abiding persons in the future."); People v. Sirianni, 89 A.D.2d 775, 776, 453 N.Y.S.2d 485 (N.Y.A.D.1982); Chew v. State, 121 Or.App. 474, 855 P.2d 1120, 1122, review denied, 318 Or. 24, 862 P.2d 1304 (1993) (defense counsel not required "to predict their client's future criminal activities and inform them of the potential consequences of such activity"); Beagen v. State, 705 A.2d 173, 175 (R.I.1998) (possibility that defendant could be subjected to enhanced penalties under federal sentencing guidelines if he were to be convicted of federal crime while on probation for state offense was collateral consequence to defendant's nolo contendere plea to state offense); Adkins v. State, 911 S.W.2d 334, 351 (Tenn.Crim.App. 1994) (no ineffective assistance of counsel as it was "highly unlikely that knowledge of the possible collateral consequences of [defendant's] plea would have changed his ultimate *832 decision to accept the plea bargain"); Shipley v. State, 828 S.W.2d 475, 480-481 (Tex.Ct. App.1992, pet.ref'd) (no obligation to warn against consequences of future conduct).[5]
We conclude that the fact that Wilkerson's defense attorneys did not advise Wilkerson of possible or even potential enhancement consequences of future aberrant conduct is not ineffective assistance of counsel. There is no constitutional requirement for such advice. It involves only a collateral issue. A rule requiring such advice would implicate speculation. Nor is the judge required to independently give such information to a defendant. Aside from the fact that Wilkerson has not established either prong of the test for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2063-2064, 80 L.Ed.2d 674, 693 (1984), or in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987), his argument runs counter to the philosophy of Strickland v. Washington that "no particular set of detailed rules" should govern counsel's conduct. 466 U.S. at 668-669, 104 S.Ct. at 2064-2065, 80 L.Ed.2d 674. See also State v. Savage, 120 N.J. 594, 619, 577 A.2d 455 (1990). There is also no showing that even if Wilkerson had been advised by his attorney in the manner he suggests that he would not have pled guilty and would have insisted on going to trial. See State v. DiFrisco, 137 N.J. 434, 457, 645 A.2d 734 (1994), cert. denied, 516 U.S. 1129, 116 S.Ct. 949, 133 L.Ed.2d 873 (1996). By his pleas Wilkerson disposed of three separate indictments and one criminal accusation against him, containing an aggregate of fifteen separate charges, including a first degree drug distribution charge, robbery and weapons charges, terroristic threats, resisting arrest, and other drug charges. Wilkerson received an aggregate sentence of eight years in prison with no parole eligibility. The likelihood that he could have received a more favorable result is indeed remote. Rather, Wilkerson faced the prospect of further convictions and lengthier sentences, as well as a potential consecutive sentence.
Affirmed.
NOTES
[1] Wilkerson's PCR petitions also raised various other claims of ineffective assistance of counsel. He asserted that his attorney's failure to file a motion to suppress evidence in connection with his 1989 indictment was ineffective assistance of counsel. In connection with his 1990 indictment he again argued ineffectiveness of counsel for failure to move to suppress evidence and also alleged prosecutorial misconduct stemming from the prosecutor's failure to investigate whether the evidence against him was admissible. On his second 1991 indictment and plea he claimed that his attorney should have negotiated a guilty plea to disorderly persons theft rather than third degree theft as the latter ultimately contributed to his career offender status in federal proceedings. Finally, with respect to the remaining convictions, he argued that the court and the prosecutor erred in including the charge of terroristic threats in his plea agreement without reviewing with him the consequences of that plea, which also later resulted in a substantial sentence enhancement in federal court.
[2] On a quasi-criminal level it is safe to assume, as an example, that licensed motor vehicle drivers are acutely aware that if they commit repetitive offenses there may be serious adverse effects both in penalties involved and potential loss of driver's license, not to mention insurance consequences. Indeed, many motor vehicle offenses expressly carry increased penalties for repeat offenders. See, e.g., State v. Lucci, 310 N.J.Super. 58, 60-61, 707 A.2d 1370 (App.Div.), certif. denied, 156 N.J. 386, 718 A.2d 1215 (1998). In other cases, a judge has discretion to impose a fine or penalty up to and including a specified amount or sanctions. An individual's driving record may bear on the severity of the fine or penalty. As for criminal offenses, defendants are presumed to know that prior convictions of crimes may subject them to extended term sentences. See, e.g., N.J.S.A. 2C:44-3(a).
[3] See City of Ottawa v. Lester, 16 Kan.App.2d 244, 822 P.2d 72, 74-75 (1991), for an extensive list of collateral consequences.
[4] We note that the federal rule even allows penalty enhancement for an uncounselled misdemeanor conviction under certain circumstances. See Nichols v. United States, 511 U.S. 738, 747-748, 114 S.Ct. 1921, 1928, 128 L.Ed.2d 745 (1994). But see State v. Latona, 307 N.J.Super. 387, 389, 704 A.2d 1045 (App.Div.), certif. denied, 154 N.J. 607, 713 A.2d 498 (1998).
[5] In Shipley v. State, the Texas Court of Appeals said:

Appellant's assertion that counsel should have informed him that the convictions stemming from the guilty pleas could potentially be used later to enhance the charges the next time he was caught violating the law, implies that counsel should automatically anticipate Appellant would continue to act as a one-man crime wave. Inferentially, such an argument requires the conclusion [that] Appellant's 20-day sentence was insufficient to deter further criminal activity. Furthermore, adherence to the view expressed in the contention would also necessarily abrogate the need for Appellant to accept any personal responsibility regarding the enhancement of any future criminal conduct he might commit. Thus, we conclude the lack of such a warning by counsel is not sufficient to establish that Appellant was afforded only nominal representation. Nor does the absence of such a warning affirmatively illustrate that Appellant lacked sufficient knowledge of the direct consequences of the pleas to the extent the pleas were constitutionally invalid. [828 S.W.2d at 480-481].