825 A.2d 1144 (2003)
361 N.J. Super. 370
STATE of New Jersey, Plaintiff-Respondent,
v.
Abdul MUMIN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 2002.
Decided January 9, 2003.
*1146 Brian Zavin, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Zavin, of counsel and on the brief).
Casey N. MacDonald, Assistant County Prosecutor, argued the cause for respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Ms. MacDonald, of counsel and on the brief).
Mary Beth Wood, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Peter C. Harvey, Acting Attorney General, attorney).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
*1145 The opinion of the court was delivered by WINKELSTEIN, J.A.D.
Defendant Abdul Mumin was indicted by an Atlantic County Grand Jury and charged with second-degree sexual assault, pursuant to N.J.S.A. 2C:14-2c (count one); fourth-degree criminal sexual contact, pursuant to N.J.S.A. 2C:14-3b (count two); third-degree terroristic threats, pursuant to N.J.S.A. 2C:12-3b (count three); and third-degree criminal restraint, pursuant to N.J.S.A. 2C:13-2 (count four). He entered a guilty plea on August 18, 2000, to count twofourth-degree criminal sexual contact. As part of the plea agreement, the State dismissed counts one, three and four of the indictment, and recommended a sentence of 365 days in state prison.
On September 21, 2000, in accordance with the plea recommendation, the court imposed 365 days incarceration. Defendant received credit for the 362 days he had already served. The court also imposed appropriate penalties and assessments.
Fourth-degree criminal sexual contact qualifies as a predicate sexually violent offense for civil commitment pursuant to *1147 N.J.S.A. 30:4-27.26(b), a provision of the New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. Before defendant was released from custody, the New Jersey Attorney General petitioned the court to have defendant civilly committed pursuant to the SVPA. On October 4, 2000, a judge found probable cause to believe that defendant was a sexually violent predator and defendant was committed to, and remains in, the Special Treatment Unit, also referred to as the Northern Regional Unit, located in Kearny, New Jersey.
Based on his involuntary commitment, defendant moved to vacate his sentence and retract his guilty plea. On January 5, 2001, the court denied his motion. It is from this decision that defendant has appealed. He raises the following arguments:
POINT I
THE DEFENDANT SHOULD BE ALLOWED TO WITHDRAW HIS GUILTY PLEA TO FOURTH DEGREE CRIMINAL SEXUAL CONTACT BECAUSE THE TRIAL COURT FAILED TO ADVISE HIM THAT HIS PLEA IN THIS CASE WAS LIKELY TO RESULT IN AN INDETERMINATE TERM OF CONFINEMENT UNDER THE SEXUALLY VIOLENT PREDATOR ACT.
POINT II
BECAUSE THE DEFENDANT'S ATTORNEY FAILED TO ADVISE HIM THAT HIS PLEA WOULD SUBJECT HIM TO THE SEXUALLY VIOLENT PREDATOR ACT, HE WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT. (Not Raised Below).[1]
We have reviewed the record in light of defendant's contentions and the applicable law. We reject defendant's arguments and affirm. We reject his ineffective assistance of counsel claim without prejudice to his right to pursue a post-conviction relief petition.

I
The charges against defendant arose out of an incident which took place on August 15, 1999. Defendant's version of the facts differs somewhat from the victim's version. According to the presentence report, defendant said he was outside of the Stern Light Inn in Folsom when he observed a woman get into an automobile accident in the parking lot. The woman approached defendant and asked for a ride home. Defendant agreed to take her home, but he first went back into the bar to have another drink; when he returned to his car the woman had gone. Defendant then went to a local convenience store to buy cigarettes where he saw the woman and offered to drive her home. According to defendant, the woman offered to give defendant money for gas but defendant said "no, I can suggest you hit me off." After the victim told him she was married, defendant replied "how about you jerk me off"; he pulled down his sweat pants and exposed himself. Defendant told the police that the woman started "jerking him off" and then placed her mouth on his penis. Defendant reported to the police that he never forced the woman to give him oral sex.
According to the victim, who was intoxicated when first questioned by the police, after she voluntarily got into the car with defendant, he told her that she owed him something and that she had to "suck his dick." The victim stated that she was *1148 afraid and felt that if she "didn't do it he would hurt or even kill" her.
At the plea hearing, defendant admitted to an act of sexual contact. He responded "yes" to the following question by the judge:
Q. With regard to ... count two ... it alleges that on or about the 15th day of August 1999, in the Township of Buena Vista, you did commit an act of sexual contact with a [P.S.], and you used physical force or coercion for the purpose of sexually arousing or sexually gratifying yourself or to degrade or humiliate her. Is that true?
The following colloquy then took place among defendant, his attorney and the court:
[Defense counsel] At the time you came in contact with her was she intoxicated?
[Defendant] Yes.
[Defense counsel] Did you and her somehow get involved inyou were going to be taking her home?
[Defendant] Yes.
[Defense counsel] During the course of that ride home did you coerce her to touch you
[Defendant] Yes.
[Defense counsel]in your private area?
[Defendant] Yes.
[Defense counsel] Did you do that?
[Defendant] Yes.
[Defense counsel] And it was her desire not to do that, is that correct?
[Defendant] Yes.
[Defense counsel] And this occurred while you were either taking herit was like one or two o'clock in the morning?
[Defendant] Yes.
[Defense counsel] And you were taking her home, is that correct?
[Defendant] Yes.
[The Court] And was this for the purpose of sexually gratifying yourself or humiliating her, either one of those?
[Defendant] Yes. Sexually gratifying myself.
At the plea hearing there was some discussion of defendant's obligations under Megan's Law, N.J.S.A. 2C:7-2; N.J.S.A. 2C:43-6.4, but no discussion of defendant's potential commitment pursuant to the SVPA. The plea form also made no reference to the SVPA. The judge explained to defendant the consequences of his plea:
On Indictment XX-XX-XXXX do you understand that this is a fourth-degree crime, and it carries with it a potential statutory maximum penalty of 18 months [in] New Jersey State Prison? But instead the prosecutor has recommended that in return for a plea of guilty by you at this point in time at sentencing she would recommend a sentence of 365 days in the New Jersey State Prison. Do you understand that?
Defendant replied, "Yes."
Defendant sought release pending sentencing because he had already served 362 days of the 365 day recommended sentence. The court responded:
Well, there's one snag, and ... it's a major snag. That is that, as you know, once he would be sentenced to the Department of Corrections to be assigned to the New Jersey State Prison system he would have to go through that process and be subject to their parole and not the County parole. Now I'm not saying he would serve any more time, but what I am saying is ... he would be subject to their parole rules, as he knows. And if he has a prior record of any type, then that could affect their attitude towards parole; and you know that, as well as I.
The court added that "the worst that could happen is he maxes out and max-out would be 365."

*1149 II
In the Petition for Civil Commitment under the SVPA, the August 15, 1999, offense was listed as the "predicate offense." The petition also recited that two physicians had identified defendant as a sexually violent predator who had a diagnosis which included anti-social personality disorder, frotteurism, polysubstance dependence, dysthymia, sexual sadism, and impulse disorder.
Defendant was born on July 7, 1969, and was thirty-one years old at the time the petition was filed. The petition included defendant's prior criminal and juvenile history. As a juvenile, defendant had four adjudications for criminal sexual contact between August and October 1984. His adult criminal history began when he was arrested in October 1987 and charged with distribution of a controlled dangerous substance. He pled guilty and was placed on probation. In January 1988, he was charged with one count of "criminal attempt/sexual assault" and two counts of criminal sexual contact. In February he was charged with another count of criminal sexual contact. When he was sentenced in July 1988, the January charges were dismissed; he pled guilty to the single February charge of criminal sexual contact. The court imposed a sentence of three years probation, with 364 days in county jail.
In 1990, defendant committed a series of offenses which resulted in his confinement at the Adult Diagnostic and Treatment Center (Avenel). In May he was charged with one count of criminal sexual contact. In October he was charged with one count of "criminal attempt/aggravated sexual assault," one count of aggravated assault, one count of aggravated criminal sexual contact, and one count of criminal sexual contact. The October charges arose when, while walking with a woman he knew, he touched her breasts, threw her to the ground, put his knees on her shoulders, exposed his penis and grabbed her hands, trying to place them on his penis. When she tried to scream, he "stuffed grass into her mouth and choked her."
He was later charged with one count of criminal sexual contact and one count of sexual assault from an incident which arose in November when he approached an unknown victim and attempted to insert his finger into her anus over her clothing.
Of these 1990 charges, defendant pled guilty to the May charge of criminal sexual contact; the October charges of criminal attempt/aggravated sexual assault, and aggravated assault; and the November criminal sexual contact charge. He was sentenced for these offenses on October 11, 1991. The court imposed a total of seven years at Avenel with three and one-half years of parole ineligibility. His probation arising out of his July 1988 sentence was later violated and the court sentenced him to a concurrent eighteen months at Avenel. Defendant remained at Avenel until sometime in 1997 when he "maxed out."
According to his mental evaluation at Avenel, defendant's behavior had been characterized by "poor judgment and impulsivity... he [was] apt to go to extremes to try to avoid facing unpleasant aspects of reality." He admitted to sexually assaulting women since he was approximately fifteen years old. He said, "I can't even explain it." Upon seeing "a pretty girl walk by" he would say to himself, "how would it feel to have some of that?" He said "I would expose my penis and have them try to do things for me, like masturbate me or oral sex." He admitted to grabbing women on their breasts or buttocks. He estimated that he had approximately thirty to forty victims through the years. With the exception of one, all of his victims were strangers.

*1150 III
At the motion hearing to retract defendant's guilty plea, defense counsel argued that had defendant known that his guilty plea "would have been a condition precedent [to commitment under the SVPA] ... he would not have pled [guilty]. We would have tried the case." Defense counsel considered the "facts of this case ... extremely weak." He explained that defendant only agreed to the plea because he had already served 362 days of what he anticipated would be a 365 day sentence. Defense counsel quoted defendant as saying "I don't have to do any more time, it's a criminal sexual contact, I'll take the deal, it's 365, I've got 362 in, I'm out of here."
The judge denied the motion. He reasoned that the civil commitment was a collateral consequence of the plea and the court was not required to advise a defendant of the possibility of commitment pursuant to the SVPA before a plea was taken.
On appeal, defendant asserts he should be able to withdraw his plea, because the trial court failed to advise him of the possible SVPA commitment. Defendant argues commitment under the SVPA is a penal consequence of his guilty plea which must be disclosed before the court takes the plea. The State, through the Atlantic County Prosecutor and the Attorney General, argues that commitment pursuant to the SVPA is merely a collateral consequence of the plea, not a penal consequence, which does not warrant disclosure before a defendant pleads guilty.

IV
A motion to withdraw a plea after sentencing should be granted only to correct a manifest injustice. R. 3:21-1; State v. Fischer, 38 N.J. 40, 48, 183 A.2d 11 (1962); State v. Deutsch, 34 N.J. 190, 198, 168 A.2d 12 (1961). Factors relevant to a determination of whether a defendant should be permitted to withdraw a guilty plea are: the materiality of the mistake or omission and its resulting prejudice to defendant, defendant's guilt, and manner of entry of the plea. State v. Rodriguez, 179 N.J.Super. 129, 135-36, 430 A.2d 957 (App. Div.1981). When considering whether a mistake is material, "[a] distinction is often drawn between the penal consequences of a plea and potential or actual `collateral consequences.'" State v. Wilkerson, 321 N.J.Super. 219, 224, 728 A.2d 827 (App. Div.), certif. denied, 162 N.J. 128, 741 A.2d 96 (1999). To withdraw a plea, the mistake relied upon must relate to the penal consequences of the plea since a mistake as to the collateral consequences, while it may have a significant effect on the defendant, is not material. State v. Vieira, 334 N.J.Super. 681, 686, 760 A.2d 840 (Law Div.2000) (quotation omitted); see also State v. Howard, 110 N.J. 113, 122, 539 A.2d 1203 (1988).
In State v. Heitzman, 209 N.J.Super. 617, 622, 508 A.2d 1161 (App.Div.1986), aff'd o.b., 107 N.J. 603, 527 A.2d 439 (1987), we determined that the defendant was not entitled to have his guilty plea set aside on the grounds that neither the judge nor counsel told him that he could lose his state job if he pled guilty to the crime. Judge King, speaking for the court, stated that a defendant "need be informed only of the penal consequences of his plea and not the collateral consequences, such as loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military or anything else." Ibid.; see also State v. Garcia, 320 N.J.Super. 332, 337-38, 727 A.2d 97 (App.Div.1999).
Against these standards, we examine the SVPA to determine whether commitment pursuant to the statute is penal or merely a collateral consequence of defendant's *1151 guilty plea. In enacting the SVPA, the Legislature modified the existing involuntary civil commitment process, recognizing "the need to commit those sexually violent predators who were not mentally ill as defined by the general commitment statute, but who nevertheless `pose a danger to others should they be returned to society.' " In re Commitment of E.D., 353 N.J.Super. 450, 456, 803 A.2d 166 (App. Div.2002) (quoting N.J.S.A. 30:4-27.25c). "Said another way, the intent of the Legislature in enacting the SVPA was to broaden the reach of New Jersey law to afford protection to society from those sexually violent predators who pose a danger as a result of a mental abnormality or personality disorder which makes them likely to engage in repeated acts of predatory sexual violence." Ibid.
The SVPA provides for the commitment of sexually violent predators, as defined in N.J.S.A. 30:4-27.26(b), "in an environment separate from persons" otherwise committed or confined. N.J.S.A. 30:4-27.25d. The Division of Mental Health Services in the Department of Human Services provides treatment which "shall be appropriately tailored to address the specific needs of sexually violent predators." N.J.S.A. 30:4-27.34b. To commit a person involuntarily under the SVPA, the State must demonstrate by clear and convincing evidence that the individual poses "a threat to the health and safety of others if he or she were found ... to have serious difficulty in controlling his or her harmful behavior such that it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend." In re Commitment of W.Z., 173 N.J. 109, 130, 801 A.2d 205 (2002). Once confined, "an individual should be released when a court is convinced that he or she will not have serious difficulty controlling sexually violent behavior and will be highly likely to comply with the plan for safe reintegration into the community." Ibid.; N.J.S.A. 30:4-27.32c(1).
The procedure for commitment of a person convicted of a sexually violent offense under the SVPA is set forth in N.J.S.A. 30:4-27.28. The Attorney General "may initiate a court proceeding for involuntary commitment" under certain conditions. Ibid. (emphasis added). If the person is a patient in a "short-term care facility, State or county psychiatric facility or special psychiatric hospital," the Attorney General may submit to the court a "clinical certificate for a sexually violent predator completed by a psychiatrist at the facility at which the person is a patient and the screening certificate which authorized admission of the person to the facility." N.J.S.A. 30:4-27.28a. If this section is not used, the Attorney General may initiate a court proceeding to have a person, including an inmate scheduled for release upon expiration of his or her maximum term of incarceration, involuntarily committed as a sexually violent predator, "by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist." N.J.S.A. 30:4-27.28b & c.
Given this background, we agree with the State that commitment under the SVPA is a collateral consequence of the guilty plea. Whether to initiate a court proceeding for involuntary commitment under the SVPA is discretionary with the Attorney General, not mandatory. N.J.S.A. 30:4-27.28. At oral argument, we were informed by the State that there are over 10,000 convicted sex offenders in New Jersey, yet only approximately 700 of their cases have been reviewed for possible commitment pursuant to the SVPA, of which 240 persons are currently committed. Conviction of a predicate offense is therefore not a true indicator of whether the *1152 Attorney General will initiate a commitment action under the SVPA.
A conviction, adjudication, or a finding of not guilty by reason of insanity, of a sexually violent offense only satisfies one of the criteria necessary to be committed as a sexually violent predator. See N.J.S.A. 30:4-27.26(b). The State must also prove by clear and convincing evidence that the person suffers from a mental abnormality, or personality disorder, which makes the person "likely to engage in acts of sexual violence if not confined in a secure facility." Ibid. See also W.Z., supra, 173 N.J. at 133, 801 A.2d 205. The key to commitment is not the predicate offense, but the present mental condition which creates a likelihood of future sexually violent behavior. See In re Commitment of P.C., 349 N.J.Super. 569, 580, 794 A.2d 211 (App.Div.2002).
Moreover, it is not solely the mental condition of the person that is dispositive, but whether the mental condition affects the individual's ability to control his or her sexually harmful conduct. W.Z., supra, 173 N.J. at 130, 801 A.2d 205. As Justice LaVecchia explained in W.Z., "our SVPA is essentially the same as the Kansas statute examined in Hendricks in that it `requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated.'" Id. at 127, 801 A.2d 205 (quoting Kansas v. Hendricks, 521 U.S. 346, 357, 117 S.Ct. 2072, 2080, 138 L.Ed.2d 501, 512 (1997)).
In Hendricks, the United States Supreme Court noted that the Kansas Legislature intended the statute to create a civil proceeding; it described the law as a "civil commitment proceeding" and placed it in the Kansas civil, rather than criminal, code. Hendricks, supra, 521 U.S. at 361, 117 S.Ct. at 2082, 138 L.Ed. 2d at 516. The Court further found that the statute did not have a punitive purpose because civil commitment under the statute was neither retributive nor was it intended to deter criminal activity. Hendricks, supra, 521 U.S. at 362, 117 S.Ct. at 2082, 138 L.Ed.2d at 517. The Court pointed out that the State did not base commitment on a person's criminal intent but rather on a "personality disorder" or "mental abnormality." Ibid. Finally, the Court reasoned that because the statute addressed those persons who were unable to control their behavior, they were not deterred by the threat of commitment. Ibid.
This same reasoning supports a conclusion that like the Hendricks sexually violent predator statute, the SVPA is similarly civil, rather than criminal, in nature. Like the statute in Hendricks, our SVPA is part of the involuntary civil commitment process, N.J.S.A. 30:4-27.25c, placed by the Legislature in the civil code, Title 30, Institutions and Agencies, not the criminal code, Title 2C. Nor does the SVPA promote deterrence because those who are subject to commitment are unable to control their criminal behavior.
Also like Hendricks, the consequence of commitment pursuant to the SVPA rests upon uncertain future events. Commitment does not automatically follow a conviction for a sexually violent offense. In any given case, the Attorney General may decline to initiate commitment proceedings pursuant to the SVPA. A convicted sex offender may not be diagnosed with the requisite mental abnormality or personality disorder to warrant commitment. The State may not prove by clear and convincing evidence that a defendant has serious difficulty controlling his or her sexual behavior. And a court may not find the person likely to engage in acts of sexual violence if not confined.
Commitment under the SVPA is not punitive; rather, it is subject to an independent *1153 regulatory process imposed for purposes of treatment and protection of the public. See N.J.S.A. 30:4-27.34b. In deciding whether the New Jersey sex offender registration and community notification requirements of Megan's Law were punitive, the Court in Doe v. Poritz, 142 N.J. 1, 43, 662 A.2d 367 (1995) recognized that although a statute may indirectly adversely affect, even severely, some of those subject to its provisions, the statute does not become punitive solely because it has a punitive impact. The Court said:
[T]he laws' validity, measured against the various constitutional attacks, depends on whether they inflict punishment. The determination of punishment has ordinarily consisted of several components. An initial inquiry is whether the legislative intent was regulatory or punitive: if the latter, that generally is the end of the inquiry, for punishment results; if the former, the inquiry changes to whether the impact, despite the legislative intent to regulate, is in fact punitive, usually analyzed in terms of the accepted goals of punishment, retribution and deterrence. Despite some ambivalent language, a punitive impactone that effects retribution or accomplishes deterrencerenders the law or the specific provision of the law that is attacked, punishment, but only if the sole explanation for that impact is a punitive intent. In other words, the law is characterized as regulatory in accordance with the legislative intent even if there is some punitive impact, if that impact is simply an inevitable consequence of the regulatory provisions themselves. The law is characterized as punitive only if the punitive impact comes from aspects of the law unnecessary to accomplish its regulatory purposesthat is, if the law is `excessive,' the excess consisting of provisions that cannot be justified as regulatory, that result in a punitive impact, and that, therefore, can only be explained as evidencing a punitive intent.
[Id. at 46, 662 A.2d 367].
The Court concluded that the challenged provisions of Megan's Law did not constitute punishment. Id. at 77 n. 18, 662 A.2d 367.
A similar analysis of our SVPA results in the same conclusion. The SVPA aims to protect the public and provide treatment to sexually violent predators. See In re Commitment of J.P., 339 N.J.Super. 443, 461, 772 A.2d 54 (App.Div.2001); P.C., supra, 349 N.J.Super. at 579, 794 A.2d 211. The legislative intent is regulatory, not punitive.
Beyond question, a civil commitment constitutes a significant deprivation of liberty. W.Z., supra, 173 N.J. at 125, 801 A.2d 205. Confinements under the SVPA, being indeterminate, constitute an onerous impairment of a person's liberty interest. In re Commitment of D.L., 351 N.J.Super. 77, 90, 797 A.2d 166 (App. Div.2002). However, confinement under the SVPA does not render the statute penal or punitive. As the Court said in Poritz, the punitive impact only becomes dispositive if punitive intent is the sole explanation for the statute. Poritz, supra, 142 N.J. at 46, 662 A.2d 367. Here, the legislative intent is manifested by a desire to both protect the public and treat the individualimpacts that are regulatory rather than penal. The punitive impact does not derive from "aspects of the law unnecessary to accomplish its regulatory purposes." Ibid.
We conclude that a commitment under the SVPA is not penal. The predicate offense is only one of the regulatory prerequisites for involuntary civil commitment. The legislative intent underlying the SVPA remains regulatory. Confinement as a sexually violent predator is a *1154 collateral consequence which may, but not necessarily will, be sought by the Attorney General upon conviction of an underlying predicate offense.
Decisions of other states support these propositions. See Martin v. Reinstein, 195 Ariz. 293, 987 P.2d 779 (Ct.App.1999); People v. Moore, 69 Cal.App.4th 626, 81 Cal.Rptr.2d 658 (1998); Watrous v. State, 793 So.2d 6 (Fla.Dist.Ct.App.2001); In re Detention of Lindsay, 333 Ill.App.3d 474, 267 Ill.Dec. 167, 776 N.E.2d 304 (2002); People v. Norris, 328 Ill.App.3d 994, 263 Ill.Dec. 178, 767 N.E.2d 904, appeal denied, 202 Ill.2d 646, 272 Ill.Dec. 350, 787 N.E.2d 165 (2002); In re Detention of Campbell, 139 Wash.2d 341, 986 P.2d 771 (1999), cert. denied, 531 U.S. 1125, 121 S.Ct. 880, 148 L.Ed.2d 789 (2001); Abolafya v. State, 114 Wash.App. 137, 56 P.3d 608 (2002); State v. Zanelli, 212 Wis.2d 358, 569 N.W.2d 301 (Ct.App.), review denied, 215 Wis.2d 423, 576 N.W.2d 279 (1997). The trial judge was not required to inform defendant of his possible future commitment pursuant to the SVPA when defendant entered his guilty plea. Consequently, defendant has not demonstrated a manifest injustice as to permit him to withdraw his plea.[2]

V
Finally, we turn to whether defendant's attorney's alleged failure to advise him of the potential for commitment pursuant to the SVPA constitutes ineffective assistance of counsel. To state a claim for ineffective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, paragraph 10, of the New Jersey Constitution, a defendant must first establish that counsel's representation fell below an objective standard of reasonableness. State v. Timmendequas, 161 N.J. 515, 598-99, 737 A.2d 55 (1999), cert. denied, 534 U.S. 858, 122 S.Ct. 136, 151 L.Ed.2d 89 (2001); State v. Fritz, 105 N.J. 42, 67, 519 A.2d 336 (1987) (referencing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Second, a defendant must show a reasonable probability that the result of the proceeding would have been different but for counsel's deficiencies. Timmendequas, supra, 161 N.J. at 598-99, 737 A.2d 55; Strickland, supra, 466 U.S. at 691-96, 104 S.Ct. at 2066-69, 80 L.Ed.2d at 695-98.
Generally, ineffective assistance of counsel claims are better raised in a collateral proceeding "because such claims involve allegations in evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). Here, to evaluate defendant's ineffective assistance of counsel claim, it will be necessary to go beyond the record to determine, among other things, what action defendant would have taken had he known before entering his plea of the potential for commitment pursuant to the SVPA. We therefore affirm defendant's conviction without prejudice to any subsequent PCR proceeding he may pursue. See State v. Sparano, 249 N.J.Super. 411, 419, 592 A.2d 608 (App.Div.1991).
Affirmed.
NOTES
[1] These identical issues are currently pending before the New Jersey Supreme Court. See State v. Bellamy, (A-3568-00T4) (App.Div. July 30, 2002), certif. granted, 175 N.J. 76, 812 A.2d 1108 (2002).
[2] Although the failure to advise a defendant of possible commitment pursuant to the SVPA does not render the plea involuntary, we recognize that commitment may have severe consequences for certain defendants. Therefore, the better practice would be for both the trial judge and defense counsel to advise a defendant who could be affected by the SVPA of the consequences of the SVPA's application. See Watrous, supra, 793 So.2d at 10-11.