968 A.2d 1238

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. J.K., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 30, 2009—Decided May 5, 2009.

Before Judges LISA, REISNER and SAPP–PETERSON.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Diane Toscano,* Assistant Deputy Public Defender, of counsel and on the brief).

*Anne Milgram,* Attorney General, attorney for respondent (*Robert E. Bonpietro,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

LISA, P.J.A.D.

Defendant appeals from the June 8, 2007 order denying his petition for post-conviction relief (PCR). He argues on appeal:

THE DOCTRINE OF FUNDAMENTAL FAIRNESS REQUIRES THAT DEFENDANT SHOULD BE ALLOWED TO RETRACT HIS GUILTY PLEAS TO AGGRAVATED SEXUAL ASSAULT AND SEXUAL ASSAULT, BECAUSE HE WAS NOT ADVISED THAT THE PLEAS COULD RESULT IN INDEFINITE CIVIL COMMITMENT PURSUANT TO THE SEXUALLY VIOLENT PREDATOR ACT.

Because, under the circumstances of this case, *State v. Bellamy,* 178 *N.J.* 127, 835 *A.*2d 1231 (2003), does not permit defendant to withdraw his guilty plea, we reject this argument and affirm.[1]

Defendant was indicted on October 24, 1994, charging him with nine counts of sexual offenses committed against four different victims under thirteen years of age between May 1992 and May 1993. Pursuant to a negotiated plea agreement, defendant pled guilty on April 4, 1995 to four counts, one pertaining to each of the victims. One count to which he pled guilty was for first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a(1), and the remaining three counts were for second-degree sexual assault, *N.J.S.A.* 2C:14–2b. On July 28, 1995, defendant was sentenced in accordance with the plea agreement to fifteen years imprisonment for the first-degree offense, and to concurrent seven-year terms for each of the second-degree offenses. Because the judge found defendant's sexual conduct to be repetitive and compulsive, he ordered that defendant serve his sentence at the Adult Diagnostic and Treatment Center. *See N.J.S.A.* 2C:47–3.

---

[1] This court has received numerous appeals raising substantially the same issues as raised by defendant, which is a factor inducing us to publish this opinion.

Defendant did not appeal his conviction or sentence. Prior to defendant's release from custody, the State filed a petition seeking his civil commitment pursuant to the New Jersey Sexually Violent Predator Act (SVPA), *N.J.S.A.* 30:4–27.24 to –27.38. Defendant was found to qualify for civil commitment under the SVPA, and an order was entered on November 26, 2003 directing his commitment to the Special Treatment Unit, where he has remained confined ever since.

On July 28, 2006, defendant filed his PCR petition. He claimed he was deprived of effective assistance of counsel at the time of his plea because his attorney "failed to inform him of the future potential possibility of a retroactive consequence in being subjected to commitment under New Jersey's S.V.P. Act at the completion of his term of incarceration." In a supplemental brief filed by assigned counsel, defendant argued in his PCR proceeding that, because he was not provided with notice of SVPA consequences, his guilty plea was not knowing and voluntary and resulted in fundamental unfairness. He also argued that civil commitment without notice of potential SVPA consequences constituted a denial of equal protection.

Judge Kreizman rejected defendant's arguments, finding that defendant's requested relief was barred by the Supreme Court's December 11, 2003 decision in *Bellamy*. In *Bellamy*, *supra*, 178 *N.J.* at 140–43, 835 *A.2d* 1231, the Court held that defendants who pled guilty to SVPA-eligible charges without previously being advised of the potential SVPA consequences could withdraw their guilty pleas, but also held that the new rule it announced would apply only "in this case and those cases pending in which the defendant has not yet exhausted all avenues of direct review." *Id.* at 143, 835 *A.2d* 1231. This limited retroactivity is commonly referred to as "pipeline retroactivity." The Court declined to grant complete retroactivity, which would apply the rule to all past cases, *id.* at 140–41, 835 *A.2d* 1231, including those

such as defendant's.[2]

The SVPA was enacted on August 12, 1998, effective August 12, 1999. *L.* 1998, *c.* 71, §§ 1–15. Prior to the enactment and effectiveness of the SVPA, many defendants, like this defendant, pled guilty to offenses that would later make them eligible for SVPA commitment. Because such a commitment is civil and not penal in nature, there is no *ex post facto* violation. *In re Civil Commitment of J.H.M.,* 367 *N.J.Super.* 599, 608, 845 *A.*2d 139 (App.Div.2003), *certif. denied,* 179 *N.J.* 312, 845 *A.*2d 137 (2004).

In determining that the *Bellamy* rule should be given only pipeline retroactivity, the Court stated:

> While we do not know the exact number of defendants who pled guilty to a predicate offense without knowing the possible consequences under the Act and were later committed, we recognize that full retroactivity of this decision would have a disruptive effect on the administration of justice. The lack of data regarding the number and kinds of cases that would be affected by a rule of complete retroactivity and the impact that complete retroactivity would have on the administration of justice mandates that the *new* rule should apply only to cases pending direct review at the time of the rule's announcement.
>
> [*Bellamy, supra,* 178 *N.J.* at 142–43, 835 *A.*2d 1231.]

Defendant argues that data now exists and the number of SVPA committees who pled guilty to predicate offenses prior to enactment of the SVPA without advice of the potential SVPA consequences, and whose cases were not pending trial or in the direct appeal pipeline when *Bellamy* was decided, is known and the number is not large. Therefore, defendant argues that the underlying rationale of *Bellamy's* pipeline retroactivity holding should no longer apply.

We find no merit in this argument. *Bellamy* was decided more than five years after the SVPA was enacted, and more than four years after its effective date. Certainly, data regarding the number of individuals outside the pipeline who pled guilty to predicate offenses could have been ascertained. But the Court

---

[2] The judge also found defendant's petition time-barred. *See R.* 3:22–12. Because of our disposition on the substantive issues, we do not address the procedural time bar.

was concerned with more than the number of affected commit-tees.[3] It was concerned as well with the "kinds of cases that would be affected" and by the "impact that complete retroactivity would have on the administration of justice." The measure of these concerns is not limited to the number of affected defendants, but also relates to the nature of the cases that would potentially be reopened, namely old sexual offense cases.

The case before us is a typical example. Defendant committed the underlying crimes in 1992 and 1993 against four victims. Prosecutors would be hard pressed to round up these victims, other witnesses, and any other evidence necessary to prosecute these cases at this late date. Further, the memories of the victims and other witnesses may well have faded. And, importantly, the criminal justice system should seek to avoid retraumatizing vic-tims by requiring them to relive their harsh experiences from long ago. Even if they possess sufficient memory of the past events, they are likely to have moved on with their lives, dealt with their emotional dislocation as best they could, and justifiably believed that the sexual assaults perpetrated upon them were closed cases that had been finally resolved.

Further, on a more fundamental level, it is plain that as an intermediate appellate court, we lack authority to modify *Bella-my's* pipeline retroactivity holding. *See State v. Hill,* 139 *N.J.Su-*

---

[3] Defendant contends in his appellate brief that as of April 12, 2007, 435 individuals were committed pursuant to the SVPA. And, citing *State v. Mumin,* 361 *N.J.Super.* 370, 382, 825 A.2d 1144 (App.Div.2003), *remanded for reconsider-ation in light of Bellamy, supra,* 178 *N.J.* 448, 841 A.2d 88 (2004), defendant points out that at the time of argument in that case the number of New Jersey inmates convicted of sexual offenses numbered over 10,000, but only about 700 had been reviewed by the Attorney General, *see N.J.S.A.* 30:4–27.28, for possible SVPA commitment, and 240 were actually committed. Although we do not decide the issue, we note that full retroactivity might be construed to apply to a very large number of inmates who pled guilty to a predicate offense without advice of possible SVPA consequences, because they are potentially eligible for SVPA commitment.

*per.* 548, 551, 354 *A*.2d 670 (App.Div.1976). We are indeed "bound to comply with the law established by the Supreme Court." *Ibid.*

At the time defendant pled guilty, he was fully apprised of all relevant consequences of his plea that were known at the time. He does not contend otherwise. With knowledge of those consequences, his plea was knowing and voluntary based upon the law as it then existed. Defendant's plea counsel can hardly be found deficient for failing to advise defendant of a potential consequence that did not then exist. *See State v. Fritz,* 105 *N.J.* 42, 67, 519 *A*.2d 336 (1987) (adopting the standard in *Strickland v. Washington,* 466 *U.S.* 668, 687–88, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984), that to succeed in an ineffective assistance of counsel claim, a defendant must first demonstrate that the attorney's representation "fell below an objective standard of reasonableness").

We find defendant's arguments that he was denied due process, fundamental fairness and equal protection lacking in merit. We perceive no constitutional or other infirmity in *Bellamy's* bright line test of pipeline retroactivity.

Affirmed.