**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2576-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL JONES,

    Defendant-Appellant.

_____

Submitted March 22, 2017 — Decided  April 7, 2017

Before Judges Carroll and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 98-10-4330.

Joseph E. Krakora, Public Defender, attorney for appellant (Alan I. Smith, Designated Counsel, on the brief).

Carolyn A. Murray, Acting Essex County Prosecutor, attorney for respondent (Andrew R. Burroughs, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Michael Jones appeals from an October 15, 2015 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Defendant was charged in Essex County Indictment No. 98-10-4330 with first-degree attempted murder, N.J.S.A. 2C:11-3 and N.J.S.A. 2C:5-1 (count one); first-degree kidnapping, N.J.S.A. 2C:13-1b(1) (count two); three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(4) (counts three, four, and five); second-degree aggravated assault, N.J.S.A. 2C:12-1b(1) (count six); third-degree criminal restraint, N.J.S.A. 2C:13-2 (count seven); first-degree armed robbery, N.J.S.A. 2C:15-1 (count eight); third-degree terroristic threats, N.J.S.A. 2C:12-3b (count nine); fourth-degree unlawful possession of a weapon (knife), N.J.S.A. 2C:39-5d (count ten); and third-degree possession of a weapon (knife) for an unlawful purpose, N.J.S.A. 2C:39-4d (count eleven). Defendant was charged separately in Indictment No. 98-10-4331 with fourth-degree possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7a. Defendant was also charged in Essex County Accusation No. 99-05-0619 with third-degree terroristic threats, N.J.S.A. 2C:12-3.

Defendant pled guilty to all charges on May 17, 1999. During the plea colloquy, defendant was expressly advised by the judge, and acknowledged he understood, that he would be subject to Megan's

Law and community supervision for life (CSL) by virtue of his guilty plea.[1] Additionally, defendant responded "[y]es" when asked by the judge whether he understood that "[i]f incarcerated as a repetitive and compulsive sexual offender, you may be subject to . . . involuntary commitment following the expiration of your sentence[?]"[2] The judge accepted the guilty plea after finding defendant entered it knowingly, freely, and voluntarily.

Prior to sentencing, defendant was evaluated at the Adult Diagnostic and Treatment Center (ADTC) in Avenel. The evaluator concluded that, pursuant to the New Jersey Sex Offender Act, N.J.S.A. 2C:47-3, defendant was eligible to be sentenced to the ADTC for specialized sex offender therapy.

---

[1] "Megan's Law", L. 1994, c. 127-34, established a system of registration and community notification for certain sex offenders, and set forth various sentencing and community supervision requirements pertaining to such offenders. N.J.S.A. 2C:43-6.4 was also adopted as part of Megan's Law, and provided that a judge imposing sentence on a person convicted of, among other things, sexual assault, "shall include" a special sentence of community supervision for life. See L. 1994, c. 130. Although the statute was amended in 2003 to change "community supervision for life" to "parole supervision for life," G.H. v. Twp. of Galloway, 401 N.J. Super. 392, 401 n.4 (App. Div. 2008), aff'd, 199 N.J. 135 (2009), because defendant committed these crimes before the revisions were enacted, he remains under the former designation, community supervision for life. N.J.A.C. 10A:71-6.11(a).

[2] Although the record appears to indicate that the plea forms signed by defendant similarly advised him of the Megan's Law and CSL consequences of his plea, and his potential exposure to civil commitment upon completion of his sentence, the plea forms are not included in defendant's appendix.

On February 25, 2000, defendant was sentenced to an aggregate fifteen-year prison term, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The judgment of conviction specified that defendant was to serve the final five years of his sentence at the ADTC. Defendant was also sentenced to CSL and ordered to comply with the requirements of Megan's Law. Defendant did not file a direct appeal from his conviction or sentence.

In May 2011, following the completion of his custodial sentence, defendant was civilly committed to the Special Treatment Unit pursuant to the New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. On September 24, 2014, defendant filed a pro se petition for PCR. After counsel was appointed, defendant filed a certification dated July 9, 2015, in which he averred that his attorney did not inform him of the potential for civil commitment under the SVPA as a consequence of his guilty plea.

The sentencing judge having retired, the matter was assigned to another judge who conducted oral argument on September 17, 2015. At that hearing, defendant withdrew all claims asserted in his PCR petition except for a single argument that his due process rights had been violated. Specifically, he contended the terms of his plea agreement and the court's CSL sentence were

circumvented by virtue of his civil commitment. Defendant did not seek to withdraw his guilty plea. Instead, he requested that the PCR court vacate his civil commitment to "remedy the injustice."

On October 15, 2015, the PCR judge rejected defendant's argument and denied the petition. In her oral opinion, the judge concluded there was no due process violation because defendant was specifically told during the plea colloquy he was subject to potential civil commitment after serving his custodial sentence. The judge further found no legal basis to conclude that imposition of civil commitment following a custodial sentence circumvents that sentence or the plea agreement.

Defendant appeals from the court's denial of his petition and presents the following issue for our review:

> POINT I
>
> THE ORDER DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED AND THE DEFENDANT RELEASED FROM CUSTODY BECAUSE A SENTENCE OF COMMUNITY SUPERVISION FOR LIFE IMPOSED PURSUANT TO MEGAN'S LAW PREEMPTS A CIVIL COMMITMENT UNDER THE SEXUALLY VIOLENT PREDATOR ACT.

We reject this argument as without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm the denial of defendant's petition substantially for the reasons set forth in the judge's October 15, 2015 cogent oral opinion. We add the following brief comments.

We recognize that the potential for civil commitment may be of such great consequence that the failure to disclose it to a defendant may justify allowing the defendant to withdraw his or her plea. State v. Bellamy, 178 N.J. 127, 140 (2003). Although Bellamy had not yet been decided when defendant entered his guilty plea in the present case, the trial judge adroitly anticipated the Court's decision and ensured that defendant was aware he could be civilly committed at the conclusion of his penal sentence. At the plea hearing, defendant testified he understood he could be subject to both CSL and civil commitment. Any claim to the contrary is clearly belied by the record.

Importantly, defendant does not seek to withdraw his guilty plea and stand trial on the panoply of original charges contained in the indictments and accusation. Rather, in essence, he seeks to vacate his order of civil commitment. We conclude that such remedy is not available to defendant on PCR, which affords relief only from a judgment of conviction. See Rules 3:22-1 to -3. Parenthetically, while not the situation here, we note that the authority to seek civil commitment cannot be negotiated away by plea agreement. See In re Commitment of P.C., 349 N.J. Super. 569, 578 (App. Div. 2002).

Finally, defendant presents no controlling authority for his position that his civil commitment under the SVPA is preempted by

a sentence of CSL under Megan's Law.  To the contrary, as the State correctly points out, it is well-established that "the Legislature is presumed to be aware of judicial construction of its enactments[.]"  <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 494 (2005) (quoting <u>N.J. Democratic Party, Inc. v. Samson</u>, 175 <u>N.J.</u> 178, 195 n.6 (2002)).  Accordingly, it may reasonably be assumed that the Legislature is fully cognizant that defendants have been sentenced to CSL when convicted of sexual offenses and thereafter civilly committed pursuant to the SVPA when they continue to represent a danger to the public.  The failure to amend this statutory framework thus signals the Legislature's acquiescence in its practical application.  <u>See</u> <u>Macedo v. Dello Russo</u>, 178 <u>N.J.</u> 340, 346 (2004).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION