# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2388-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE M. GONZALEZ,
a/k/a JOSE MIGUEL
GONZALEZ DEL ESTRE,
and JOSE DELESTRE,

     Defendant-Appellant.

_____

Submitted November 18, 2021 – Decided January 19, 2022

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 09-09-1072.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Marc A. Festa, Chief Assistant Prosecutor, of counsel and on the brief).

Appellant filed pro se supplemental briefs.

PER CURIAM

Defendant Jose M. Gonzalez appeals the August 29, 2019 decision denying his post-judgment application to vacate his guilty plea. After our review of the record and relevant precedents, we affirm.

Defendant had been placed on community supervision for life (CSL) prior to the February 22, 2008 amendment to the law, now referred to as "parole supervision for life [(PSL)]." See N.J.S.A. 2C:43-6.4. The offenses which triggered his CSL included, but were not limited to, second-degree criminal attempt in 2000[1]—the attempt being defendant's efforts to sexually assault an adult female—and two Pennsylvania convictions for indecent assault of female minors in 1996 and 1998.

On June 15, 2012, defendant was sentenced to 617 days' time served on a third-degree child endangering. See N.J.S.A. 2C:24-4(a). The State agreed to dismiss charges of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4), and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-2(c) and 2C:14-3(b). The judgment of conviction provides defendant's sentence was "to run concurrent

---

[1] Because we do not have the benefit of a presentence report in this matter, we are relying upon the information in the State's commitment petition and the court and counsel's on-the-record references to defendant's criminal history.

A-2388-19

with any sentence the defendant recently received for a [v]iolation of [CSL.]"

His prior CSL was converted to PSL. Defendant signed a plea form indicating his placement on PSL. An attached page titled "parole supervision for life" included the requirement that defendant report to his "assigned parole officer as instructed." The disputed language in the completed and signed plea agreement states: "The judge will give the defendant [time served] at time of plea. If the State makes any attempt to civilly commit the defendant as a result of his plea, he will be allowed to withdraw this plea."

At the time the plea was taken, the trial judge said:

> I can say that this case, in conjunction with or in combination with the earlier conviction, [defendant's plea] could result in the Attorney General moving to civilly commit him. . . . They may or may not move to civilly commit him following this conviction.
>
> I would note that question number seven . . . talks about civil commitment, and the charge of endangering [is not] one of the enumerated offenses. It doesn't say it on the form. That doesn't mean it cannot, in combination with what he has done in the past, result in an application for civil commitment. And what I said was if the Attorney General does move to civilly commit the defendant, I would allow him to retract his plea . . . .
>
> . . . .
>
> What we're talking about is what's on the table now, this event and the earlier conviction.

A-2388-19

Now, if [defendant] goes out and breaks the law at some point in the future, and for that matter I don't believe that it even would have to be a sexual offense, it could just be a crime of violence, it could be whatever, then all bets would be off because what . . . I say to the defendants when they put a plea through [is], "[d]o you understand that this plea, when combined with something you may have done in the past, and/or may do in the future, could result in you being civilly committed?" . . . .

So, [defendant], if you do plead guilty, . . . and if based on this plea and nothing else[,] this plea and items that occurred in your life in the past or things that occurred in your life in the past, if it results in a civil commitment application, I will allow you to retract this plea. But, should you go out two weeks from your sentence date[,] or two months[,] or two years later[,] and do something that results in a change in circumstances, then I wouldn't let you retract your plea.

At defendant's sentencing hearing, the judge added:

[I]f the [Attorney General] makes an attempt to civilly commit the defendant as a result of this plea, . . . the defendant will be allowed to withdraw this plea. I did say that and I'll put it on the Judgment [of Conviction.]

. . . .

If based on this plea and everything that's gone on in the past, if there was an attempt to civilly commit [defendant], I would allow him to retract his plea. But if he does something in the future and the combination of this plea, what he's done in the past, [and] what he does in the future, if all those combined result in an attempt to civilly commit him, that would be a different

4

story because then it's the new act that's the triggering event in combination with this.

. . . If you basically stay out of trouble and there's an attempt to civilly commit you, I'll allow you to withdraw your plea. But if you commit a new act and there's an attempt to civilly commit you, then I wouldn't.

As a condition of his PSL, defendant had to wear a monitoring bracelet. On September 9, 2013, he tampered with the bracelet, and thereafter failed to report to his parole officer. He was rearrested and imprisoned on the parole violation.

The January 29, 2015 petition for defendant's civil commitment under the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to -27.38, states he repeatedly violated his CSL conditions, and most recently, was incarcerated for "tampering with the GPS equipment[,]" i.e., the destruction of his PSL monitoring bracelet on September 9, 2013, and failing to report thereafter.

The petition was filed before defendant's release from state prison. The petition recites the child endangering offense as the "sexual offense" for which commitment was sought and recites his earlier sexual crimes and general criminal history under "Prior History and Other Relevant Information," including "[seventeen] adult arrests including seven arrests for violations of

condition[s] of special sentence."  The State prevailed at the ensuing hearing, and defendant was civilly committed.

In 2016, defendant filed a post-conviction relief (PCR) petition.  On appeal of the denial of relief, by way of a sua sponte order, we held defendant failed to establish ineffective assistance of counsel, but remanded for a hearing on whether defendant was entitled to withdraw his guilty plea because his reasonable expectations regarding the plea agreement were not met.  The question on remand was whether defendant was entitled to now withdraw under the express terms of the agreement.

During the hearing, the judge allowed only the testimony of the Deputy Attorney General (DAG) who recommended commitment.  The judge limited the DAG's testimony to the issue of "why" the State proceeded to commit defendant.  The judge reiterated that he was not going to permit "the case to be expanded into something that it's not."

The DAG described the factors her office routinely considers in making commitment decisions. Here, the State considered two psychiatric reports, the index offense, and defendant's prior criminal history.  The DAG explained that she initiated the review process leading to the filing of the petition, and that the "tipping point" came late in 2014 after defendant tampered with his monitor.  On

6

two prior occasions in 2003 and 2010, the office had passed defendant over for commitment. After the 2014 violation, the DAG concluded defendant could not comply with his PSL conditions. It proved that "here we were dealing with someone who not only had the sexual offenses but also was not following the mandates of the law, which to us evidenced a high degree of an antisocial personality disorder . . . ." She explained that, but for the PSL violations and defendant's incarceration, the file would not have been again subjected to review. When asked directly by the judge whether the State would have moved for commitment absent the PSL violation, the DAG responded that PSL "was not able to control [defendant's] behaviors and he was not complying[, and] that's, if you will, what did it for us."

Defense counsel vigorously argued the DAG's in-house review memo prepared as a step in the process leading to the commitment petition should be produced to corroborate the DAG's memory. The State opposed production of the memo on the basis that it was work product not otherwise discoverable.

The judge stated that he would review the memo in camera and notify counsel if something important was revealed in the document. The DAG represented that if the five-year-old memo was available, she would supply it to the court by the end of the week.

A-2388-19

In his August 29, 2019 written opinion denying defendant's motion to withdraw his guilty plea, the judge found the DAG "very credible despite the lack of her memo." We cannot discern from this statement whether the memo was unavailable due to the passage of time or whether the judge elected to decide the matter without reviewing the memo.

The judge found that defendant's commitment stemmed from his tampering with his monitoring bracelet and failing to report, not his guilty plea on the endangering offense. Corroborating this conclusion was the fact that the State did not seek commitment for defendant in 2012 when he was sentenced. Additionally, he was then diagnosed as not eligible for treatment at the Avenel Diagnostic and Treatment Center. Thus, the judge denied defendant the opportunity to withdraw his guilty plea.

Defendant now appeals, raising the following point:

> POINT I
>
> [DEFENDANT] SHOULD BE ALLOWED TO WITHDRAW HIS PLEA.

In his uncounseled brief, defendant argues that pursuant to In the Matter of Commitment of P.C., 349 N.J. Super. 569 (App. Div. 2002), the plea agreement was void ab initio because the clause allowing him to withdraw his guilty plea if the State moved to commit him rendered his sentence illegal.

Ordinarily, appellate courts review PCR courts' legal conclusions de novo. State v. Harris, 181 N.J. 391, 415-16 (2004); State v. Belton 452 N.J. Super. 528, 537 (App. Div. 2017). However, we review plea withdrawal motions applying an abuse of discretion standard. State v. O'Donnell, 435 N.J. Super. 351, 372 (App. Div. 2014). We reverse only if the PCR court's decision was "clearly erroneous." State v. Hooper, 459 N.J. Super. 157, 180 (App. Div. 2019) (quoting State v. Simon, 161 N.J. 416, 444 (1999)). Namely, the decision must lack any rational explanation, depart from established policies, or rest on an impermissible basis. State v. Williams, 458 N.J. Super. 274, 280 (App. Div. 2019).

Simply stated, the difficulty with defendant's argument is the irrefutable fact that the "triggering" event was defendant's decision to cut his bracelet and stop reporting to his parole officer. In other words, the illegality that initially would have made defendant's plea "void ab initio" and warranted granting his application to withdraw his plea has been resolved because of defendant's conduct. Despite the technically illegal agreement prohibiting the State from moving against defendant, defendant committed an independent act which was itself illegal—destroying his ankle bracelet and failing to contact his parole officer.

A-2388-19

There is no question that In re Commitment of P.C. prohibits precisely what was attempted here, albeit in a different form. In P.C., defendant pled guilty and the prosecutor and defendant stipulated that regardless of the SVPA, the Attorney General could not seek civil commitment. 349 N.J. Super. at 576. Clearly, "neither a county prosecutor nor a defendant may by plea agreement frustrate the Attorney General's authority to protect the public from sexually violent predators." Id. at 578. However, we said only the problematic portion of the plea agreement was void: "the portion of the plea agreement . . . seeking to exempt appellant from the operation of the . . . SVPA is contrary to New Jersey law and public policy. It is unenforceable." Ibid.

This agreement is different; it merely permits withdrawal. But the difference between a plea agreement permitting a defendant to withdraw and one which flatly purports to prohibit the Attorney General from filing a petition for civil commitment is a distinction without a difference. In both cases, the parties are attempting, with judicial participation, to gut the Attorney General's authority to proceed in this very important and highly sensitive area. Defendant's argument that he never could have had the benefit of the bargain, and thus the plea agreement should be voided, is technical, purely theoretical, and in his case irrelevant to the reality that his own subsequent illegal conduct

triggered the Attorney General's review and ultimate decision to pursue civil commitment.

Defendant could not attain the benefit of the bargain solely because of his own conduct. He violated the very conditions under which he had been placed before this plea was entered. He therefore does not have the right to retract his plea at this point in time.

This situation is like that addressed in In re Civil Commitment of M.L.V., 388 N.J. Super. 454 (App. Div. 2006). There, M.L.V. contended that the State could not proceed to seek his commitment pursuant to the SVPA because the Parole Board had decided to release him. We said:

> The SVPA provides for the involuntary commitment of persons who require "continued involuntary commitment as a sexually violent predator" as that term is defined in N.J.S.A. 30:4-27.26[(b)]. The Act provides the Attorney General with authority to initiate a court proceeding for the commitment of persons who are currently in psychiatric facilities. N.J.S.A. 30:4-27.28[(a)]. The Attorney General also may initiate proceedings for the commitment "of an inmate who is scheduled for release upon expiration of a maximum term of incarceration. . . ." N.J.S.A. 30:27.28[(c)]. In addition,
>
> > The Attorney General, in an exercise of the State's authority as parens patriae, may initiate a court proceeding for the involuntary commitment of any person in accordance with the procedures set forth in

> this section by filing the required submission with the court[] in the jurisdiction in which the person whose commitment is sought is located.
>
> [M.L.V., 388 N.J. Super. at 462-63 (citing N.J.S.A. 30:4-27.28[(d)]) (emphasis in original).]

If the Attorney General has the power to pursue civil commitment of anyone who fits the relevant criteria, including a person that the Parole Board considers fit for release, surely the public policy behind the SVPA mandates that we conclude this technically illegal plea agreement—which was not really relevant to defendant's commitment—cannot obstruct SVPA proceedings triggered by defendant's independent, illegal conduct.

Motions to withdraw guilty pleas are granted after sentencing "to correct a manifest injustice." R. 3:21-1. No manifest injustice has occurred here. Defendant's petition must be denied. Regardless of the technical anomaly and impropriety in defendant's plea agreement, his own conduct made the issue moot.

Defendant's hyper focus on the petition as being somehow dispositive does not address the DAG's unchallenged testimony, which the judge found credible. We defer to such findings. See State v. Hubbard, 222 N.J. 249, 262 (2015) ("Appellate courts reviewing a grant or denial of a motion to suppress

A-2388-19

must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record."). The DAG stated the obvious: defendant would not have come under scrutiny but for his pending release from state prison after he was incarcerated on violation of PSL. His own inability to comply with PSL conditions pushed the State beyond the "tipping point" into deciding to pursue civil commitment.

It would have been preferable if the judge had made a decision on the record regarding the State's objection to production of the memo given the work product argument, and if he would have explained why he proceeded to issue a decision in the absence of the memo. Regardless, the record is clear on the key facts. Defendant's conduct, which would have produced the same result even if he had never pled to this offense, triggered the Attorney General's review of his status. It was that final act of removing his bracelet and absconding from parole that concerned the State. By doing so, defendant raised the specter that he could not control his impulses and thus posed a danger to the public. Defendant's argument that he never got the benefit of his bargain cannot succeed since his own subsequent conduct caused him to face commitment, rather than anything stemming from the plea agreement. Therefore, we affirm the judge's decision denying defendant leave to withdraw from the plea.

A-2388-19

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2388-19